Opinion filed August 9,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00354-CR

                                                    __________

 

                             WAYNE
EDWARD ALLEN, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 29th District Court

 

                                                         Palo
Pinto County, Texas

 

                                                    Trial
Court Cause No. 14276A

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
jury convicted Wayne Edward Allen of engaging in organized criminal activity. 
The trial court assessed his punishment at confinement in the Institutional
Division of the Texas Department of Criminal Justice for a term of fifty years. 
The trial court additionally assessed a fine of $10,000.  Appellant challenges his
conviction in a single point of error.  We affirm.

Background
Facts

Texas
Ranger Michael Don Stoner worked as a narcotics agent in Palo Pinto and Parker
Counties in the fall of 2009 for the Criminal Investigation Division of the
Texas Department of Public Safety.  While working undercover on September 11,
2009, he entered Jackie Lynn Smith’s residence to purchase narcotics.  Ranger Stoner
encountered Robert Earl Jefferson Jr. at Smith’s residence.  Ranger Stoner
sought to purchase $200 worth of crack cocaine from Jefferson.  Ranger Stoner
testified that, while he and Jefferson were completing the transaction,
Jefferson recognized him as a former classmate from high school.  Ranger Stoner
and Jefferson had a discussion away from the others wherein Ranger Stoner asked
Jefferson not to reveal his identity to the others.  Ranger Stoner also asked
Jefferson to contact him later for the purpose of getting Jefferson to assist Ranger
Stoner in his investigation.

Jefferson
contacted Ranger Stoner on November 13, 2009, to provide information about the
distribution of crack cocaine in the Mineral Wells area.  Ranger Stoner
testified that Jefferson provided him with the names of the individuals
involved.  Jefferson also identified the vehicles used in the distribution
process, and he informed Ranger Stoner that the drugs were being obtained in
Fort Worth.  Jefferson also told Ranger Stoner the route that the suspects would
take to and from Fort Worth.

Jefferson
subsequently contacted Ranger Stoner on November 16, 2009, to inform him that
Smith, Isidore Krishna Bridgeforth, and Brian Dukes would be going that day to
purchase cocaine in Fort Worth.  Jefferson further advised Ranger Stoner that
the suspects would be driving a maroon Dodge pickup.  Upon receiving this
information, Ranger Stoner set up surveillance on Smith’s residence in Mineral
Wells.  He observed Bridgeforth and Dukes loading Smith into the Dodge pickup
that Jefferson had described.  Ranger Stoner knew Bridgeforth and Smith on
sight.  Smith needed their assistance getting into the vehicle because he was
handicapped.

Ranger
Stoner and two other undercover narcotics agents conducted “moving
surveillance” on Smith, Bridgeforth, and Dukes as they first ran some errands
in Mineral Wells.  The suspects then exited Mineral Wells on FM 1195 driving
through Millsap to Interstate 20 and then to Fort Worth.  After making several
stops in Fort Worth, the suspects drove to a residence on Harlem Street in Fort
Worth.  Ranger Stoner testified that the residence belonged to appellant.  He
observed Bridgeforth and Dukes meeting with appellant in appellant’s front
yard.

The
agents lost surveillance of Smith, Bridgeforth, and Dukes afterwards.  Based
upon information provided by Jefferson, Ranger Stoner and the agents drove back
toward Mineral Wells on Interstate 20 in an attempt to reestablish
surveillance.  Ranger Stoner observed the Dodge pickup near the Brock exit.  Ranger
Stoner passed the suspects in the process of catching up to them.  He observed Bridgeforth
driving the pickup.  Ranger Stoner exited Interstate 20 via the Brock exit, and
the suspects did as well.  While Ranger Stoner proceeded toward Millsap, the
suspects turned onto Fairview Road.  Ranger Stoner dispatched another agent to
follow the suspects.

Bridgeforth
subsequently failed to negotiate a curve on Fairview Road, resulting in the
pickup striking a tree.  When agents arrived on the scene of the accident,
Bridgeforth and Dukes were standing outside the pickup.  Agents found a crack
pipe in a nearby ditch and a rock of crack cocaine in the bed of the pickup
near the area where Bridgeforth was standing.  While agents arrested
Bridgeforth for possession, Ranger Stoner spoke with Dukes away from the
others.  Dukes told Ranger Stoner that the group had acquired drugs in Fort
Worth.  Dukes also voluntarily removed a package containing crack cocaine from
his sweatpants and gave it to Ranger Stoner.  Ranger Stoner did not arrest
Dukes at that time.  Agents also did not arrest Smith.  Instead, ambulance
personnel transported Smith to the hospital for evaluation.

Dukes
came to see Ranger Stoner on November 17, 2009, to be interviewed.  Dukes
agreed at that time to inform Ranger Stoner if anyone affiliated with Smith
returned to Fort Worth for more drugs.  Dukes called Ranger Stoner on November
19, 2009, to tell him that a group planned to return that day to Fort Worth for
more drugs.  Ranger Stoner established surveillance on Smith’s residence at
that time.  He subsequently observed Billy Ray Herring loading Smith into a
white Dodge pickup.  Ranger Stoner also observed Wilbert Ratliff accompanying
Smith and Herring in the pickup.

Ranger
Stoner and other agents followed the suspects’ vehicle to Fort Worth.  They
observed the suspects pulling into a church parking lot near appellant’s
residence.  While Herring looked under the hood of the pickup, Ratliff walked
across the street to appellant’s house.  Ranger Stoner testified that Ratliff
was observed meeting with appellant.  After Ratliff walked back to the pickup,
the suspects drove back to Mineral Wells with Ranger Stoner and the agents
following them.

As
the suspects entered Mineral Wells, Ranger Stoner requested State Trooper
Donnie Wright and Mineral Wells Police Officer Scott Mitcham to stop them.  Trooper
Wright stopped the vehicle for speeding.  Trooper Wright initially spoke with
Herring outside the vehicle.   Trooper Wright subsequently removed Ratliff from
the vehicle.  Trooper Wright made the decision to arrest Ratliff when he found
a crack pipe on him.  As Trooper Wright was handcuffing Ratliff, Ratliff threw
a baggie of crack cocaine into a nearby ditch.  Trooper Wright permitted
Herring and Smith to leave, and he transported Ratliff to the DPS office for Ranger
Stoner to interview him.  Ratliff told Ranger Stoner that the drugs that he
threw in the ditch came from appellant.

Ranger
Stoner described appellant’s role in the organization as the supplier of the
crack cocaine.  Ranger Stoner testified that Smith served as the connection to
the source and supply.  Smith also orchestrated the transport of crack cocaine
from Fort Worth and its distribution in Mineral Wells.  Ranger Stoner described
the roles of Bridgeforth, Ratliff, Dukes, Herring, and Jefferson as assisting
with the transport and distribution of crack cocaine in Mineral Wells.  Ranger Stoner
testified that the maroon Dodge pickup in which Bridgeforth, Dukes, and Smith
traveled on November 16 belonged to appellant and that appellant provided it to
Smith to use in traveling back and forth between Mineral Wells and Fort Worth.

Jefferson
testified that appellant initially delivered cocaine to Smith at his residence
in Mineral Wells and that he did so often.  Jefferson also testified that appellant
provided Smith with the maroon Dodge pickup for the purpose of transporting the
cocaine from Fort Worth to Mineral Wells.  Jefferson stated that he,
Bridgeforth, Dukes, Ratliff, and Herring hung out at Smith’s residence and that
the money gleaned from the sale of cocaine went into Smith’s wallet.

Dukes
testified that Smith provided him with a place to stay and drugs on a daily
basis.   He admitted to traveling with Smith and Bridgeforth to Fort Worth on
November 16 to purchase cocaine from appellant.  Dukes testified that Smith
accompanied them because it was his money and he was the one purchasing the
cocaine.  Bridgeforth got the money from Smith to purchase the drugs, and he
put the cocaine in Smith’s coat pocket after the transaction occurred.  Dukes
removed the drugs from Smith at Smith’s request after the wreck occurred. 
Dukes admitted to possessing the drugs when the officers arrived at the scene
of the wreck.

When
Dukes visited with Ranger Stoner the next day, he told Ranger Stoner about the
organization and said that Smith was the “kingpin.”  Dukes testified that
everyone helped Smith because of his handicap.  He stated that the group would
go to Fort Worth several times a week to resupply and that he went along on
several occasions.  Dukes testified that Smith wanted to make the trip on
November 19, 2009, to replace the drugs that were lost when Dukes was arrested
on November 16, 2009.  Dukes also testified that he had observed appellant
coming to Smith’s residence on several earlier occasions to deliver cocaine to
Smith and that appellant gave the maroon Dodge pickup to Smith so that appellant
would not have to come to Mineral Wells.

Ratliff
testified that he lived with Smith because he needed a place to stay and Smith
needed assistance.  Ratliff stated that Smith compensated him with a place to
stay and later crack cocaine.  Ratliff testified that Smith contacted Herring
on November 19 so that they could use his pickup to travel to appellant’s
residence in Fort Worth.  Ratliff testified that Smith accompanied them on
November 19 because “[h]e’s the man that took care of the business, you know.” 
Ratliff stated that they called appellant while en route and that he met appellant
at his door for the transaction.  Ratliff also testified that Smith gave him the
money to purchase the drugs.

Underlying
Proceedings

The
grand jury indicted appellant, Smith, Bridgeforth, Herring, and Ratliff for
engaging in organized criminal activity.  The indictment alleged that they
collaborated in a combination to carry out a conspiracy to possess cocaine with
the intent to deliver.  See Tex.
Penal Code Ann. § 71.01 (West 2011), § 71.02 (West Supp. 2012).  Appellant,
Smith, and Bridgeforth were tried together.  The jury convicted all three of
engaging in organized criminal activity.[1]

Point
of Error

In order to commit the offense of engaging in organized
criminal activity, the actor must not only agree to participate in a criminal
combination but must also perform some overt act in furtherance of that
agreement.  Barber v. State, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988). 
The indictment alleged that appellant performed an overt act in pursuance of
the agreement by delivering a quantity of cocaine to Ratliff on or about
November 19, 2009, in Tarrant County.  In a single point of error, appellant
contends that Ratliff’s testimony on this matter was not sufficiently corroborated.

Analysis

Article
38.14 of the Code of Criminal Procedure provides that a conviction cannot be
upheld on the basis of accomplice testimony unless it is corroborated by “other
evidence tending to connect the defendant with the offense committed.”  Tex. Code Crim. Proc. Ann. art. 38.14
(West 2005).  In reviewing the sufficiency of the corroborating evidence, we
eliminate the accomplice testimony from consideration and focus on the
remaining portions of the record to determine whether there is any evidence
that tends to connect the defendant with the commission of the crime.  Solomon
v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); Cathey v. State,
992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999).  The corroborating evidence may
be direct or circumstantial and need not be sufficient by itself to establish
the defendant’s guilt; it is sufficient if the combined weight of the
non-accomplice evidence tends to connect the defendant to the offense.  Solomon,
49 S.W.3d at 361; Gosch v. State, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991).
 A defendant’s mere presence at the scene of the crime is by itself
insufficient corroboration; however, presence combined with other suspicious
circumstances may be enough to tend to connect the defendant.  Dowthitt v.
State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); Cox v. State, 830
S.W.2d 609, 611 (Tex. Crim. App. 1992).  Similarly, evidence that the defendant
was in the presence of the accomplice at or near the time or place of the
offense is proper corroborating evidence.  McDuff v. State, 939 S.W.2d
607, 612 (Tex. Crim. App. 1997).

Appellant
directs his challenge under Article 38.14 at Ratliff’s testimony pertaining to
the evidence of the alleged overt act involving him.  As correctly determined
by the trial court, Ratliff was an accomplice as a matter of law because he was
a person who participated before, during, or after the commission of the
crime.  See Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).
 Accordingly, the corroboration requirement of Article 38.14 applied to his
testimony.

Ranger
Stoner provided the bulk of the non-accomplice testimony in this case.  He
testified that he observed Smith, Herring, and Ratliff leave Smith’s house on
November 19 in the same vehicle.  He testified that the agents followed them to
the church parking lot near appellant’s residence and that Ratliff “was
observed” meeting with appellant.  On cross-examination by appellant’s trial
counsel, Ranger Stoner testified that Sergeant Cartwright was the agent that
observed Ratliff at appellant’s residence and saw Ratliff meet with a “heavyset
black male.”  There are numerous references in the record that appellant was
referred to as “Big Man.”  Additionally, Ranger Stoner testified that crack
cocaine was recovered from Ratliff when he returned to Mineral Wells.

The
non-accomplice testimony in this case sufficiently connected appellant to the
commission of the charged crime as well as the alleged overt act.  The direct or circumstantial non-accomplice evidence is sufficient corroboration if it
shows that rational jurors could have found that it sufficiently tended to
connect the accused to the offense.  Smith v. State, 332 S.W.3d 425, 442
(Tex. Crim. App. 2011); Simmons v. State, 282 S.W.3d 504, 508 (Tex. Crim.
App. 2009).  We defer to the factfinder’s resolution of the evidence in making
this determination.  Smith, 332 S.W.3d at 442; Simmons, 282
S.W.3d at 508.  Ranger Stoner’s testimony tended to connect appellant to the
overt act because it placed Ratliff at appellant’s home under suspicious
circumstances in the company of other participants engaging in the organized
criminal activity.  Accordingly, there was sufficient evidence corroborating
Ratliff’s testimony that appellant delivered cocaine to him on November 19. 
Appellant’s sole point of error is overruled.

This
Court’s Ruling

            The
judgment of the trial court is affirmed.

 

            

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

August 9, 2012

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









[1]Smith’s appeal is docketed as Cause No. 11-10-00355-CR,
and Bridgeforth’s appeal is docketed as Cause No. 11-10-00356-CR.